UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RICARDO TORRES, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil Action No. 1:16-cv-10448-IT |
| KELLY RYAN, | ) ) ) | |
| Respondent. | ) ) | |

REPORT AND RECOMMENDATION ON
PETITION FOR WRIT OF HABEAS CORPUS

July 24, 2018

Boal, M.J.

On March 2, 2016, Ricardo Torres filed a petition pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Docket No. 1 (the "Petition"). Torres raises one claim in the Petition, that his conviction was based on insufficient evidence. Respondent Kelly Ryan opposes the Petition. Docket No. 29. For the reasons set forth below, this Court recommends that the District Judge DENY the Petition.[1]

I.   PROCEDURAL HISTORY

Torres was charged with larceny of property having a value over $250. Supplemental Answer ("S.A.") 1.[2] A jury trial commenced on February 7, 2013 in Essex County Superior Court. S.A. 3. At the close of the Commonwealth's case, Torres made an oral motion for a

---

[1] On April 7, 2016, the District Judge referred this case to the undersigned for full pretrial case management and a report and recommendation on dispositive motions. Docket No. 8.
[2] Torres was charged with two additional counts for which a nolle prosequi entry was made prior to the start of the larceny trial. S.A. 1.

1

required finding of not guilty, which the trial judge denied. S.A. 390-91. Torres immediately renewed the motion after resting without presenting a case, but it was again denied. Id. at 390-92.

On February 11, 2013, Torres was convicted of larceny and sentenced to serve three to five years in prison, which sentence was to run on and after the state sentence he was then serving. S.A. 1, 4.[3] That same day, Torres filed a notice of appeal. Id. at 4.

On February 24, 2014, he filed a motion for a directed verdict of not guilty pursuant to Rule 25 of the Massachusetts Rules of Criminal Procedure. Id.[4] On September 28, 2015, the Massachusetts Appeals Court ("MAC") affirmed the judgment. S.A. 8; Commonwealth. v. Torres, No. 14-P-999, 2015 WL 5665003, at *2 (Mass. App. Ct. Sept. 28, 2015). On November 2, 2015, Torres filed an application for further appellate review with the Supreme Judicial Court, which that court denied in December 2015. S.A. 8, 165-98.

On March 2, 2016, Torres filed the instant Petition, Docket No. 1,[5] which the Respondent answered on June 10, 2016. Docket No. 16. Torres filed his supporting brief on October 26, 2016, Docket No. 26, and on January 23, 2017, Respondent filed her opposition. Docket No. 29.

---

[3] At the time of his conviction, Torres was serving a sentence for open and gross lewdness after having violated probation on that charge. S.A. 88 n.2. He was also on bail for another larceny charge, which apparently triggered the "on and after" requirement of G.L. c. 279, § 8B. Id.

[4] The trial court docket reflects that Torres' appeal was dismissed on June 18, 2015, S.A. 5, but the appeals court docket just notes that the judgment was affirmed on September 28, 2015. S.A. 8.

[5] After filing his Petition, Torres filed a motion for a new trial in the Superior Court on April 19, 2016, which was denied. S.A. 5.

II.     FACTUAL BACKGROUND[6]

The MAC found the following facts:

The complaining witness testified that she encountered the defendant in a hallway at her place of employment [Multicultural Home Care ("MHC")], a home care service agency.[7] After having a "gut feeling" that the defendant had taken her belongings, the complaining witness engaged the defendant in conversation. When the defendant turned around, the witness saw that he had her purse in his hands. After reclaiming her purse, the witness directed and followed the defendant to an office area where some of her colleagues worked in an attempt to alert someone to contact the police. In the office, the defendant asked a few questions, then turned to leave. The police were alerted as the defendant escaped from the building. During this encounter, which lasted no longer than five minutes, the defendant give [sic] his name to the complaining witness as "Jose Torres."

Moments after the police arrived, the nurse that provided daily at-home care to the defendant's mother arrived on scene. Having seen the defendant leaving the house earlier that morning, she described him as wearing a "white shirt, khaki pants, short pants, and … a Nike type of flexible bag." She also provided a different first name for the defendant, "Ricardo."

Within hours of the incident, the police compiled a photograph array of eight individuals, including the defendant, based on the description[8] from the complaining witness. The complaining witness and two of her colleagues from the office separately viewed the array. The complaining witness tentatively identified the photograph of an individual who was not the defendant[9] whereas her colleagues both identified the defendant. One colleague testified that she had seen the defendant the day before the incident. However, on the day of the incident, she recollected that while she spoke briefly to the defendant in her office, it was not in the presence of the complaining witness. The other colleague testified that she saw the complaining witness come into the office with the

---

[6] Absent clear and convincing evidence to the contrary, the recitation of the facts by the MAC is presumed to be correct. See 28 U.S.C. § 2254(e)(1); Gunter v. Maloney, 291 F.3d 74, 76 (1st Cir. 2002); Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002).

[7] Footnote 1 of the MAC decision, inserted at this point, states: "The defendant's mother is a client of the agency and the defendant lives with her."

[8] Footnote 2 of the MAC decision, inserted at this point, states: "The complaining witness described the defendant as follows: 'short, stocky, Hispanic, shaved head,' wearing 'beige shorts, white socks, black sneakers, and a gray … tank top[,]' and carrying a black Nike bag."

[9] Footnote 3 of the MAC decision, inserted at this point, states: "On cross-examination, the officer who administered the photograph array explained that '[a]fter hesitation and stating that she was nervous and it happened quickly[,] she did end up identifying somebody that wasn't [the defendant] but she wasn't sure if that was the individual.'"

>defendant, but did not witness the defendant speaking with anyone in the office. Both colleagues described the defendant as having similar physical attributes and clothing to those described by the complaining witness.[10]

Torres, 2015 WL 5665003, at *1.

III.  DISCUSSION

    A.  Habeas Corpus Standard Of Review

The AEDPA presents a "formidable barrier" limiting the availability of habeas relief where state courts have adjudicated the merits of a prisoner's claims. Burt v. Titlow, 571 U.S. 12, 20 (2013). Torres cannot obtain federal habeas relief under 28 U.S.C. § 2254(d) for any claim that a state court "adjudicated on the merits" unless he can show that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Rashad, 300 F.3d at 34. In other words, state court decisions merit substantial deference.

As the Supreme Court repeatedly has emphasized, such deference results in a federal habeas corpus standard that is "difficult to meet," with the petitioner carrying a heavy burden of proof. Harrington v. Richter, 562 U.S. 86, 102 (2011); accord Cullen v. Pinholster, 563 U.S. 170, 181 (2011). If a state court's decision "was reasonable, it cannot be disturbed." Hardy v. Cross, 565 U.S. 65, 72 (2011); see Parker v. Matthews, 567 U.S. 37, 38 (2012) (emphasizing federal habeas courts may not "second-guess the reasonable decisions of state courts") (internal quotation and citation omitted). When applying this strict standard, a court must presume that the state court's factual findings are correct, unless the petitioner has rebutted that

---

[10] Footnote 4 of the MAC decision, inserted at this point, states: "One colleague described the defendant as wearing khaki shorts and carrying a Nike book bag. The other colleague described him as short and bald."

4

presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Miller–El v. Cockrell, 537 U.S. 322, 340–41 (2003).

The "contrary to" prong is satisfied when the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," Williams v. Taylor, 529 U.S. 362, 405 (2000), or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different] result." Id. at 406 (internal punctuation omitted).

The "unreasonable application" prong is satisfied if the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  When making the "unreasonable application" inquiry, federal habeas courts must determine "whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409.  An unreasonable application of the correct rule can include the unreasonable extension of that rule to a new context where it should not apply, as well as an unreasonable failure to extend the rule to a new context where it should apply.  Id. at 407.  It cannot, however, include a decision by a state court not "to apply a specific legal rule that has not been squarely established by [the Supreme Court]." Knowles v. Mirzayance, 556 U.S. 111, 122 (2009).[11]

---

[11] In determining what constitutes "clearly established federal law", petitioners can generally look to all settled federal law as of the time the state court conviction at issue became "final". See Williams, 529 U.S. at 390; Teague v. Lane, 489 U.S. 288, 295-96 (1989).  That occurs upon the completion of (or the running of the time for filing) certiorari proceedings in the Supreme Court following state court direct review.  See Williams, 529 U.S. at 390; Teague, 489 U.S. at 295-96.  However, Supreme Court decisions issued after finality may be considered if they shed light on the meaning and application of a rule that the Supreme Court had previously established before the state court decision became final.  See, e.g., Johnson v. Bagley, 544 F.3d 592, 599 (6th Cir. 2008) (considering Supreme Court opinions that postdate state court decision on ineffective assistance claim because they did not rest on new law but instead applied the "clearly

      B.      Sufficiency Of The Evidence

Torres argues that the MAC violated his Fourteenth Amendment right to due process when affirming a conviction predicated on insufficient evidence at trial to identify him as the perpetrator of the crime. Docket No. 26.[12]

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). Sufficiency of evidence claims are governed by the Supreme Court's decision in Jackson v. Virginia, which provides that the constitutional right to due process guarantees "that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof." Jackson v. Virginia, 443 U.S. 307, 316 (1979). The relevant test is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (citations omitted; emphasis in original).

"Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman v. Johnson, 566 U.S. 650, 651 (2012). First, on direct appeal, a reviewing court may set aside the jury's verdict on the grounds of insufficient evidence only if "no rational trier of fact could have agreed with the jury." Id. (citation omitted). Second, following the standard set out in section 2254(d)(1), a federal court may overturn a state court's sufficiency analysis under Jackson only if the state court decision was objectively unreasonable. Id. In practice, the First Circuit has recognized that the Jackson standard is

---

established" precedent of Strickland); Williams v. Allen, 542 F.3d 1326, 1337 n.7 (11th Cir. 2008) (same).

[12] Torres mentions the Fifth Amendment in his brief, but does not otherwise discuss any relief sought on that basis. See Docket No. 26 at 1.

"rarely met where there is plausible evidence to support a verdict." King v. MacEachern, 665 F.3d 247, 252 (1st Cir. 2011) (citation omitted).

The MAC's conclusion was neither contrary to nor an unreasonable application of clearly established federal law. In rejecting Torres' claim that the Commonwealth's evidence did not support a guilty verdict, the MAC applied its sufficiency of evidence standard under Commonwealth v. Latimore, 378 Mass. 671 (1979). Torres, 2015 WL 5665003, at *1. The First Circuit has held that the Latimore test is "functionally identical" to the Jackson standard, so that a decision applying the Latimore standard is equivalent to applying the federal constitutional standard. Logan v. Gelb, 790 F.3d 65, 71 (1st Cir. 2015); Leftwich v. Maloney, 532 F.3d 20, 24 (1st Cir. 2008). Torres does not dispute this. Docket No. 26 at 3.

Applying the Latimore/Jackson standard, the MAC found that three witnesses identified Torres as the perpetrator. Torres, 2015 WL 5665003, at *2. In particular, the MAC described two witnesses who saw Torres at MHC, one that spoke with him and the other that was present when the complaining witness brought Torres into the office before identifying him as the person who had "tried snatching her purse." Id. The third witness, who was familiar with Torres, described his attire and the bag he had been carrying when he left his home. Id. The MAC found that this description matched that provided by the complainant and another witness in "material respects." Id. "On this record," the MAC concluded that the Commonwealth had met the Latimore standard. Id.

Brown concedes that the Commonwealth established he was at the MHC at the time the theft was committed, but nevertheless argues that his conviction is based on speculation and conjecture. Docket No. 26 at 1-2. Torres emphasizes that the complaining witness did not identify him, and the witnesses that were able to did not see the crime committed. Id. at 1-3.

7

However, the MAC found that "[p]ositive identification by a complainant is not the exclusive means to provide sufficient evidence of the identity of a defendant", a conclusion that accords with Jackson.  See Torres, 2015 WL 5665003, at *2.  Indeed, under Jackson, direct evidence is not required to sustain a conviction.  Linton v. Saba, 812 F.3d 112, 123 (1st Cir. 2016) ("A criminal conviction may be supported by circumstantial evidence alone.").  "This principle is even more firmly established in connection with the deferential approach to state-court decisionmaking that federal habeas review demands."  Magraw v. Roden, 743 F.3d 1, 6 (1st Cir. 2014) (collecting cases).  When a jury draws inferences from circumstantial evidence, a reviewing court should refrain from second-guessing the ensuing conclusions as long as (1) the inferences derive support from a plausible rendition of the record, and (2) the conclusions flow rationally from those inferences.  United States v. Spinney, 65 F.3d 231, 234 (1st Cir. 1995).

Here, the MAC correctly concluded that a rational jury could have found proof of guilt beyond a reasonable doubt.  Indeed, while the complaining witness did not identify Torres as the perpetrator, she described him in a manner that was consistent with the testimony of two other witnesses, both of whom identified Torres.  Torres, 2015 WL 5665003, at *1, *1 n.3, *2.  In addition, where the evidence places a defendant at the scene of the crime in close temporal proximity to its perpetration, "the inference of his guilt gains substantial weight."  Magraw v. Roden, No. 09-11534-FDS, 2013 WL 1213056, at *3 (D. Mass. Mar. 22, 2013), aff'd, 743 F.3d 1 (1st Cir. 2014) (citation omitted).  Accordingly, this Court finds that the decision of the MAC was not an unreasonable application of Jackson.

IV.     RECOMMENDATION

For the foregoing reasons, this Court recommends that the District Judge DENY the Petitioner Ricardo Torres' Petition for Writ of Habeas Corpus in its entirety.

V.      REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b).  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hosp., 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir. 1993).

    /s/ Jennifer C. Boal_____
JENNIFER C. BOAL
United States Magistrate Judge